FIRE INSURANCE EXCHANGE, Appellant, v. ZENITH RADIO CORPORATION, a Delaware Corporation, CHARLESTON TV & APPLIANCE, a Nevada Corporation, Respondents.

No. 17319

December 31, 1987                              747 P.2d 911

*Simmons, Madson & Snyder,* Las Vegas, for Appellant.

*Johnson & Rosenberger,* Las Vegas, for Respondents.

# OPINION

By the Court, YOUNG, J.:

The subject of this appeal is the sanction imposed by the district court under NRCP 37(b). We find no abuse of discretion, and therefore, affirm the judgment of the district court.

Appellant, Fire Insurance Exchange, insured the home of Carmen and Fulvia Di Lorenzo, which was destroyed by fire on July 30, 1980. The home was unoccupied at the time of the fire; therefore, there were no eye witnesses to the ignition and spread of the fire.

Richard Whitaker, appellant's property claims representative, conducted a preliminary investigation of the residence on the date of the fire. In the course of his investigation, Whitaker looked for evidence supporting subrogation liability. Based upon his investigation, Whitaker concluded the fire originated in the area of a television set, H.B.O. Converter, and lamp. Thereafter, Whitaker told his supervisor of the potential subrogation claim against the manufacturers of these products, and Fire Insurance Exchange retained Daniel J. Bowker, a fire cause and origin expert, to investigate the cause of the fire.

Bowker accompanied Whitaker to the destroyed residence on August 4, 1980. Based upon his observations, Bowker advised Whitaker that the fire had originated in the area of the television set and H.B.O. Converter. Bowker later testified in his deposition that the fire originated inside the television set. Although Bowker was not trained in electrical engineering, or television set design and manufacturing, he took no steps to preserve the television set because he felt the remains were insufficient to conduct tests that might determine whether an electrical fault was the cause of the fire.

The residence remained in its damaged condition until approximately September 1, 1980, when contractors were engaged by Fire Insurance Exchange to remove the debris—including the television set—from the home.

On December 9, 1982, over two years after the fire and the disposal of the television set, Fire Insurance Exchange filed its complaint against Zenith Radio Corporation, the manufacturer of the television set, and Charleston TV & Appliance Company, the retailer. Respondents answered on April 22, 1983, and thereafter, discovery ensued.

On June 14, 1983, respondents served interrogatories on Fire Insurance Exchange. Interrogatory No. 45 requested the following information:

> State the present location of the television set described in Plaintiff's Complaint and the name of the person or entity

giving the address and telephone number of each person or entity having possession and control of the television set or its component parts.

No answer was provided until October 1983, when Fire Insurance Exchange evasively answered the interrogatory as "unknown."

A request for the production of the television set was filed by respondents on July 25, 1983. On May 7, 1984, the district court ordered Fire Insurance Exchange to produce the television set.

Thereafter, respondents served supplemental interrogatories on June 8, 1984, inquiring:

What became of the television set at issue here?

(a) If you are not sure, who do you believe would have such knowledge?

(b) Was the television set at issue here destroyed? If so, why was it destroyed, who destroyed it and explain any other details surrounding its destruction.

Fire Insurance Exchange failed to answer the supplemental interrogatories until November 1984, when it stated:

Dan Bowker—Bowker Fire Cause Consultants would be able to explain what happened to the television set in question.

On September 12, 1985, respondents moved for sanctions pursuant to NRCP 37; or, in the alternative, exclusion of the testimony of appellant's expert witness and motion for summary judgment. Appellant replied, and the motions were subsequently argued on October 9, 1985, before Judge Pavlikowski. The district court ordered that the testimony of appellant's expert be excluded, and as appellant admitted to having insufficient evidence to prove its case in absence of the expert testimony, the district court granted summary judgment in favor of respondents.

Fire Insurance Exchange appeals from the judgment of the district court.

NRCP 37(a) authorizes the district court to issue orders compelling discovery when a party fails to respond to a request for inspection submitted under NRCP 34. NRCP 34(a) states: "Any party may serve on any other party a request . . . to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are *in the possession, custody or control of the party upon whom the request is served. . . .*" (Emphasis added.) Fire Insurance Exchange argues: the television set was out of its control prior to the issuance of this order; therefore, the order of the district court, which supported the sanctions and which was based upon the discovery request under NRCP 34, was invalid.

We are not persuaded by the narrow construction of the Nevada Rules of Civil Procedure offered by Fire Insurance Exchange. It would be unreasonable to allow litigants, by destroying physical evidence prior to a request for production, to sidestep the district court's power to enforce the rules of discovery.

Generally, sanctions may only be imposed where there has been willful noncompliance with the court's order, Finkelman v. Clover Jewelers Blvd., Inc., 91 Nev. 146, 147, 532 P.2d 608, 609 (1975), or where the adversary process has been halted by the actions of the unresponsive party, Skeen v. Valley Bank of Nevada, 89 Nev. 301, 303, 511 P.2d 1053, 1054 (1973). *See also* Temora Trading Co. v. Perry, 98 Nev. 229, 645 P.2d 436 (1982); Kelly Broadcasting v. Sovereign Broadcast, 96 Nev. 188, 606 P.2d 1089 (1980). However, even where an action has not been commenced and there is only a potential for litigation, the litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action. Wm. T. Thompson Co. v. General Nutrition Corp. 593 F.Supp. 1443, 1455 (1984); United States v. ACB Sales & Services, Inc., 95 F.R.D. 316, 318 (1982); United Nuclear Corp. v. General Atomic Co., 629 P.2d 231, 309 (N.M. 1980).

We find that the judgment of the district court is clearly supported by the record. Mr. Whitaker was looking for evidence which would support a subrogation claim in his initial investigation of the destroyed residence. Thereafter, he reported positively on the potential of a subrogation claim. Fire Insurance Exchange then retained Mr. Bowker, who investigated the residence just five days after the fire. Based upon his investigation, he concluded the fire originated inside the television set. Fire Insurance Exchange took the recorded statement of the insureds, Carmen and Fulvia Di Lorenzo, on August 6, 1980, only two days after Mr. Bowker's investigation. When the recorded statement was requested by respondents, Fire Insurance Exchange replied that the statement had been taken in anticipation of the present litigation.

It is evident from these statements that within six days of the fire, Fire Insurance Exchange made a preliminary investigation which revealed a potential subrogation claim, an expert was hired to verify the suspected cause and did in fact conclude that the fire started in the television set, and statements were taken in anticipation of the litigation which was initiated over two years later.

Where a party is on notice of potential litigation, the party is subject to sanctions for actions taken which prejudice the opposing party's discovery efforts. In each of the cases cited above, the

defendant was the party who impeded discovery. In the case at hand, however, it was plaintiff's actions which drew the sanctions of the court. The actions of Fire Insurance Exchange had the effect of reserving to itself all expert testimony based upon examination of the television set. Any adverse presumption which the court might have ordered as a sanction for the spoliation of evidence would have paled next to the testimony of the expert witness. The statements of Fire Insurance Exchange reveal that it was on notice of potential litigation prior to the destruction of the television set, and Fire Insurance Exchange had the power to preserve the remains of the television set. The fact that the complaint was not filed by Fire Insurance Exchange until two years after the fire should not be held against respondents.

Accordingly, the district court's decision is affirmed in all respects.

GUNDERSON, C. J., STEFFEN, SPRINGER, and MOWBRAY, JJ., concur.