ARBY W. ALPER, Appellant, v. GEORGE L. STILL-INGS and ROBERT S. FADEM, Respondents.

No. 4662

February 18, 1964                    389 P.2d 239

*George E. Franklin, Jr.,* of Las Vegas, for Appellant.

*Deaner, Butler & Adamson,* of Las Vegas, for Respondents.

# OPINION

By the Court, BADT, C. J.:

Appellant commenced this action in the court below to terminate a lease from appellant to respondents' assignor. Respondents counterclaimed for $6,000 damages for loss of business suffered "in the past three months" by reason of the harrassment of respondents and the patrons of respondents in the leased premises, and in addition, for $50,000 punitive damages by reason of appellant's willful and malicious interference with respondents' quiet and peaceable possession.

The subject of appellant's complaint has become moot, as he sold the leased property pending appeal. The case was tried to a jury.

Alper and one Posin, as co-owners of Bagdad Inn Motel, in Las Vegas, leased to Posin a portion of the motel premises known as the Red Fez Bar. The respondents are Posin's assignees. As the Motel had 76 rooms and only 62 parking spaces, the lease provided: "It is agreed that personnel and customers of lessee shall not use the parking facilities upon the premises of the said motel." The lease also contained the following covenant: "That so long as the lessee complies with each and every term and condition of this lease agreement he shall enjoy peaceable possession of the demised premises without interference or hindrance from the lessor."

Appellant's complaint (now moot) has been based on the violation of the no-parking covenant. The counterclaim is based on the violation of the covenant for peaceable enjoyment. No other provisions of the lease are pertinent to the issues. The jury returned a verdict

in favor of respondents in the sum of $10,000, and the appeal is taken from the judgment rendered on said verdict and from the court's order denying appellant's motion for a new trial.

Appellant assigns two errors as follows:

(1) "There was a manifest disregard by the jury of instruction No. 5 given them by the court, in that there was no evidence whatsoever of any acts of appellant in violation of the terms of the lease."

(2) "There was a manifest disregard by the jury of instruction No. 6 given them by the court, in that there was no evidence whatsoever that respondents suffered any damage by reason of the acts of appellant."

It is unnecessary to pass on the first assignment of error, as we are satisfied that a reversal on the second assignment must be had.

There is a complete lack of support for the jury's assessment of $10,000 damages. Stillings had been given and had studied Posin's figures showing Posin's gross income from the bar. He was asked how they compared with his own (Stillings') gross and answered: "[H]is (Posin's) figures and my figures are almost identical." But respondents assert that the proper measure of damages is not loss of profits but the decreased value of the leasehold, which had several years to run. If so, there is still a complete lack of evidence as to any such decreased value. Nor is appellant in position to raise this issue. It was not pleaded. No jury instruction was requested. It is raised for the first time on appeal.

Respondents contend further that appellant's attack on the lack of evidence to support a verdict for compensatory damages, overlooks the element of exemplary damages. But compensatory damages must be given before punitive damages are authorized. Miller v. Schnitzer, 78 Nev. 301, 371 P.2d 824, and cases therein cited.

It is established law in this state, as in most jurisdictions, that to justify a money judgment the amount, as

well as the fact of damage, must be proved; that there must be substantial evidence as to the amount of damage, as the law does not permit arriving at such amount by conjecture; that to prove a right to damages without proving the amount, entitles a plaintiff to nominal damages only. Peterson v. Wiesner, 62 Nev. 184, 206, 146 P.2d 789.

Nor would a judgment for nominal damages support the $10,000 verdict as punitive damages. No instruction on punitive damages was asked for or given, and there is nothing in the jury's verdict to indicate that it intended the $10,000 verdict to be for punitive damages. In Jefferson v. Joiner, 75 Nev. 207, 337 P.2d 622, in which there was "no evidence of 'proved value of services, if any, of decedent to his beneficiaries' " and where the record tended to show that the financial condition of the beneficiaries had actually improved since and as a result of the death of the decedent, and that the judgment would be error if it assessed anything more than nominal damages, this court said:

"In our view it is not possible, in the light of the record, to read the judgment as an award of exemplary damages. * * * Nowhere in the record can we find an expressed intention on the part of the judge to award or take into consideration exemplary damages. * * * If, however, it was the intention of the trial court to award exemplary damages, the disproportion between nominal pecuniary damages and the total judgment is so great that an intention to make such an exemplary award must, under these circumstances, expressly appear, since it cannot reasonably be presumed."

Respondents rely upon the following language in Brown v. Lindsay, 68 Nev. 196, 228 P.2d 262: "The rule against the recovery of uncertain damages generally is directed against uncertainty as to the existence or cause of damage rather than as to measure or extent." Even if this language could be construed to restrict the rule of uncertainty to the existence rather than to the measure of damage it would not serve respondents, as the very existence of damage is uncertain here. The

compensatory damage claim was for lost profits. But so far as concerns respondents, the Red Fez Bar was a new business operation. We held in Knier v. Azores Constr. Co., 78 Nev. 20, 368 P.2d 673, that a claim for loss of profits could not be sustained under such circumstances.

The judgment is reversed with costs. The reversal of the judgment leaves appellant unprejudiced by the denial of his motion for new trial. The appeal from the order denying new trial is accordingly dismissed.

McNAMEE and THOMPSON, JJ., concur.